**IN THE UNITED STATES DISTRCT COURT**
**FOR THE WESTERN DISTRICT OF WISCONSIN**

---

CHAD M. MCEVER,
SCOTT OPPENHEIMER, and
PEGGY O OPPENHEIMER LIVING TRUST,

                              Plaintiffs,

v.                                                    Case No.: 25-cv-508-jdp

TOWN OF SCOTT,

                         Defendant.

---

**PLAINTIFFS' RESPONSE MEMORANDUM IN OPPOSITION TO LAST
WILDERNESS ALLIANCE'S MOTION TO INTERVENE**

---

NOW COMES Plaintiffs, Chad M. McEver, Scott Oppenheimer, and Peggy O Oppenheimer Living Trust, by and through its attorneys, Weld Riley, S.C., by Anders B. Helquist, John Robert Behling, and Jeffrey A. Cormell, and submit the following Response Memorandum in Opposition to Last Wilderness Alliance's Motion to Intervene:

## <u>INTRODUCTION</u>

The Last Wilderness Alliance (hereinafter "LWA") filed a Motion to Intervene into the above captioned case and Memorandum in Support of Motion to Intervene. As discussed in detail below, there are no supportable grounds in the Seventh Circuit for such an intervention and adding the LWA as a party would only add to the procedural complexities of this case. As stated in *Sierra Club, Inc. v. E.P.A.*, "Officious intermeddlers ought not be allowed to hijack litigation that the real parties in interest can resolve to mutual benefit." 358 F.3d 516,  518 (7th Cir. 2004). The LWA has not met its burden for intervention and as such its motion must be denied.

1

## LEGAL STANDARDS FOR INTERVENTION

To obtain intervention as a matter of right pursuant to Federal Rule of Civil Procedure 24(a)(2) (hereafter "FRCP"), the proposed intervenor, LWA, must show: (1) The application was timely; (2) An interest relating to the subject matter of the litigation; (3) Potential impairment, as a practical matter, of that interest by the disposition of the action; and (4) The existing parties will not adequately represent the movant's interests. *See e.g., State of Illinois v. City of Chicago*, 912 F.3d 979, 984 (7th Cir. 2019). In order to prevail, "The applicant has the burden of proving each of the four elements of intervention as of right; the lack of one element requires that the motion to intervene be denied." *Keith v. Daley*, 764 F.2d 1265, 1268 (7th Cir. 1985).

In the alternative, LWA seeks permissive intervention under FRCP 24(b)(1)(B), which provides this Court discretion to allow LWA's intervention if the claimant "has a claim or defense that shares with the main action a common question of law or fact." Among other potential factors, in a motion for permissive intervention, the Court, in exercising its discretion "must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." FRCP 24(b)(3).

## ARGUMENT

### I.  LWA IS NOT ENTITLED TO INTERVENTION AS OF RIGHT UNDER FRCP 24(A)(2)

#### A.  Timeliness of LWA's motion.

As to the first element of an intervention of right, Plaintiffs do not contest that LWA filed a timely motion to intervene with the Court.

**B.  LWA does not possess a direct, significant, and legally protectable interest.**

LWA does not meet its burden to show it possesses a "direct, significant and legally protectable interest in the [subject] at issue in the lawsuit." *Keith*, 764 F.2d at1268.[1] "Rule 24(a) demand[s] 'rigor in the requirement that the interest be direct and substantial.'" *United States v. 36.96 Acres of Land*, 754 F.2d 855, 860 (7th Cir. 1985) (hereinafter "36.96 Acres") (citing *Meridian Homes Corp. v. Nicholas W. Prassas & Co.,* 683 F.2d 201, 204 (7th Cir. 1982)). This standard signifies the Seventh Circuit's "commitment to keeping the scope of intervention of right within reasonable bounds," in recognition of the fact that "intervention can impose substantial costs on the parties and the judiciary, not only by making the litigation more cumbersome but also (and more important) by blocking settlement." *Solid Waste Agency of N. Cook Cty v. U.S. Army Corps of Eng'rs,* 101 F.3d 503, 507 (7th Cir. 1996) (hereinafter "Solid Waste Agency").

"The interest of a proposed intervenor. . .must be greater than the interest sufficient to satisfy the standing requirement. As the Supreme Court in *Donaldson* stated, the interest must be a 'significantly protectable interest.'" *36.96 Acres*, 754 F.2d at 859 (quoting *Donaldson v. United States*  400 U.S. 517, 531, 91 S.Ct. 534, 542, 27 L.Ed. 2d 580 (1971)); *see also Planned Parenthood*, 942 F.3d at 798 ("[M]ore than the minimum Article III interest'" is required for intervention as of right.) (citation omitted)). "The interest must be so direct that the applicant would have 'a right to maintain a claim for the relief sought.'" *Keith*, 764 F.2d at 1268 (quoting *Heyman v. Exchange National Bank of Chicago*, 615 F.2d 1190, 1193 (7th Cir. 1980)).

---

[1] The Seventh Circuit has used term the "'unique' as a shorthand for the proposition that an intervenor's interest 'must be based on a right that belongs to the proposed intervenor rather than to an existing party in the suit.'" *Planned Parenthood of Wisconsin, Inc. v. Kaul*, 942 F.3d 793, 798 (7th Cir. 2019) (hereafter "Planned Parenthood") (quoting *Keith*, 764 F.2d at 1268).

    i.  LWA's "record of advocacy" or "statewide advocacy" interest is not a
        direct, significant, and legally protectable interest.

LWA's claimed interest does not show it is a "direct, significant, and legally protectable" interest. *Keith*, 764 F.2d at 1268. After providing their history as a 501(c)(4) organization,[2] LWA improperly asserts its generalized interest for intervention as follows: a "record of advocacy" and that for the "past several years, LWA's persistent, statewide advocacy for the need to regulate wake surfing" is an "interest sufficient related to this case." (Doc. 9:8). LWA's "statewide advocacy" allegedly included "countless presentations including to municipalities, legislators, the Wisconsin Natural Resources Board, the Governor's office, public seminars and workshops" (Doc. 9:8), that it has "submitted resolutions to the Wisconsin Conservation Congress suggesting legislation regulating enhanced wakes," "submitted petitions to the Wisconsin Department of Natural Resources to regulate the use of ballast systems," and that through "educational presentations" regarding wake surfing LWA has "helped approximately 33 towns enact local ordinances" regarding wake surfing. (Doc. 9:7). LWA admits that lobbying for changes to local laws, i.e., ordinances, is their primary interest. "[A]ssisting towns *with education* and the *enactment of such ordinances* is in effect *the entire business of LWA*." (Doc. 9:12) (emphasis added). But LWA's so-called "sufficient[ly] related" advocacy interest to generally engage in persuasive communication and lobby for changes and restrictions to laws or regulations at both the local town and state levels is not a "direct, significant, and legally protectable interest in the

---

[2] Unlike a 501(c)(3), a 501(c)(4) non-profit organization like LWA is formed for the purpose of and able to engage primarily in lobbying. "Seeking legislation germane to the organization's programs is a permissible means of attaining social welfare purposes. Thus, a section 501(c)(4) social welfare organization may further its exempt purposes through lobbying as its primary activity without jeopardizing its exempt status." "Social welfare organizations," *available at* https://www.irs.gov/charities-non-profits/other-non-profits/social-welfare-organizations, last visited July 8, 2025. "'Legislation' includes action by the Congress, any state legislature, *any local council, or similar legislative body*," such as a Town Board, which enacts local ordinances prohibiting wake surfing. 26 CFR § 56.4911-2(d)(1) (emphasis added).

4

[subject] at issue in the lawsuit," the suit of which challenges the procedures and constitutionality of an ordinance banning wake surfing, enacted by a governmental body, the Town of Scott. *Keith,* 764 F.2d at 1268.[3]

The Seventh Circuit has consistently and long-held that "lobbying," i.e., persuasive communications and advocacy related to an issue or law with governmental bodies – including advocacy which resulted in changes to the law that subsequently relates to a lawsuit's subject matter – is not a direct, significant, and legally protected interest to warrant intervention under FRCP 24(a)(2). Perhaps that is why the LWA cites the Tenth Circuit, among others, while ignoring Seventh Circuit precedent regarding the lack of a direct, significant, and legally protected interest in such advocacy efforts. (*See* Doc. 9:8).

LWA's stated interest of "statewide advocacy" or its "record of advocacy" for greater regulation of wake surfing is akin to the "pro-life" organization in *Keith*, which was denied intervention. In *Keith,* a non-profit "pro-life" organization (the "IPC") sought to intervene in a lawsuit challenging the constitutionality of an Illinois statute regulating abortion. 764 F.2d at 1267. The IPC, consistent with its mission – "promotion of the basic human right to life, specifically for unborn children, and the presentation and support of alternatives to abortion" – lobbied in support of that challenged statute (and lobbied against a governor's veto of that statute), which regulated and restricted abortion. *Id.* Almost identically to what LWA asserts regarding its interest in "statewide advocacy" (Doc. 9:8) to "advocate[] for reasonable restrictions on wake surfing" (Doc. 9:10) and its hyperbolic conclusions that the lawsuit is a "threat to the *very existence* of LWA"

---

[3] In addition to the reasons set forth *infra*, LWA's advocacy can be summarized as essentially "a political or programmatic one" where LWA favors less wake surfing and more environmental regulation, but that is not a direct, significant, and legally protected interest justifying intervention. *Sierra Club*, 358 F.3d at 518 (7th Cir. 2004) (denying Illinois State Chamber of Commerce's intervention as being "political and programmatic" in which the chamber "favors more business and less environmental regulation").

because "*education and the enactment of such ordinances* is in effect the entire business of LWA" (Doc. 9:12) (emphasis added) – the IPC argued the "interests as a lobbyist support its intervention as of right" and "that its '*very existence* is intertwined *with its ability to promote this type of legislation* and to insure that such laws are adequately defended if challenged.'" *Keith*, 764 F.2d at 1269 (emphasis added) (citation omitted).[4] The IPC also "asserted as interests of its members the intensive lobbying" for abortion alternatives and fetal protections, *id.* at 1267, just as LWA has asserted LWA and its members have engaged in educational efforts to help approximately 33 towns enact local ordinances restricting wake surfing. . (Doc. 9:7-8).

*Keith* rejected that advocacy interest, as it was "not a direct and substantial interest sufficient to support intervention in the instant lawsuit." *Id.* (citing *Wade v. Goldschmidt*, 673 F.2d 182 (7th Cir. 1982) (non-profit group formed to support bridge's construction, whose construction was challenged, asserted generalized economic, personal and environmental interests in the bridge, but was denied intervention).[5]

*Keith* then proceeded to draw parallels with another Seventh Circuit decision, which also denied a non-profit environmental and lobbyist organization's petition for intervention. 764 F.2d at 1269 (citing *36.96 Acres*, 754 F.2d 855). Similar to the non-profit IPC's lobbying interest, *Keith* noted the proposed intervenor in *36.96 Acres* – Save the Dunes Council – had 'lobbied hard for the passage of the 1976 amendments to the Indiana Dunes Act" among other actions and advocacy

---

[4] Ordinances enacted by Town Boards in Wisconsin, such as the Town of Scott, are part of the Town's legislative function and those ordinances are "legislation." *See Wisconsin Carry, Inc. v. City of Madison*, 2017 WI 19, ¶25, 373 Wis. 2d 543, 562, 892 N.W.2d 233, 241 ("ordinances are municipal legislative devices, formally enacted, that address general subjects in a permanent fashion"). Any distinction between advocating for and working to advance town versus statewide "legislation" is an immaterial difference.

[5] Reading their Memorandum generously, LWA may also attempt to resurrect their supposed interest by claiming their "very existence" is at stake with this lawsuit and that alone provides a sufficient interest for intervention. (Doc. 9:11; Doc. 9:12). That type of interest is insufficient to justify intervention, either as of right or permissively. *Keith*, 764 F.2d at 1267.

related to the dunes at issue in the litigation. *Keith*, 764 F.2d at 1269 (citing *36.96 Acres*, 754 F.2d at 857). Notwithstanding that advocacy interest, or Save the Dunes Council's "aesthetic and environmental interest" in the particular dune as being both "legitimate and demonstrable," the Seventh Circuit concluded it "cannot say that it is direct, substantial or legally protectable." *Keith*, 764 F.2d at 1270 (quoting *36.96 Acres*, 754 F.2d at 859).

For at least two reasons, *Keith*'s discussion of IPC's interests and rejection of IPC's intervention is instructive, if not binding, on how this Court should reject the supposed "interest" of LWA as insufficient for intervention as of right.

*First,* this is a lawsuit challenging the constitutionality of the Ordinance and whether it complies with the requirements of Wis. Stat. § 30.77. LWA's "advocacy" interest has no direct, substantial, and legally protected interest related to whether a governmental body like the Town complied with constitutional and statutory requirements. The Town is charged with following constitutional and statutory requirements when it enacted the Ordinance and as the governmental body charged with following such requirements, it is the only proper defendant as it relates to whether its own actions complied with those constitutional and statutory requirements. *See Keith*, 764 F.2d at 1269 (lawsuit initiated to protect constitutional rights which would be violated by the statute places the governmental defendant as the only entity required to defend and enforce the enacted law, rejecting IPC's claimed lobbying interests, including speaking, promotion, and persuasion of its principles); *Wade*, 673 F.2d at 185 ("The only interest involved is of the named defendants, governmental bodies. . .the governmental bodies charged with compliance [of the statutory procedural requirements] can be the only defendants. . . . [T]he proposed intervenors' interests do not relate 'to the property or transaction which is the subject of the action' and they have therefore failed to assert an interest in the lawsuit.")

7

*Second,* the IPC's interest was "essentially communicative and persuasive," "sought to inform people about abortion and about IPC's preference for alternatives to abortion," and "seeks to lobby legislators so that its view on the protection of 'the unborn' may become law." *Id.* at 1270. IPC was "encouraged to thrive, and to speak, lobby, promote, and persuade, so that its principles may become . . . the law of the land." *Id.* But even with such a history of advocacy regarding the issue central to its mission, "Such a priceless right to free expression, however, *does not also suggest that IPC has a right to intervene in every lawsuit involving abortion rights, **or to forever defend statutes it helped to enact.***" *Id.* (emphasis added).

The same holds true for LWA here and its advocacy for wake surfing restrictions. Almost identically to IPC but involving a different subject of public interest, LWA has no direct, significant, and legally protectible interest through its record of lobbying, i.e., its "communicative and persuasive," work, *id.*, regarding wake surfing through presentations to "municipalities, legislators, the Wisconsin Natural Resources Board, [and] the Governor's office," (Doc. 9:8), other educational efforts and lobbying efforts including petitions and resolutions to the Wisconsin Department of Natural Resources ("WDNR") or Wisconsin Conservation Congress ("WCC") (Doc. 9:7), and being "significantly involved in the enactment of ordinances regulating enhanced wakes on Wisconsin lakes pursuant to Wis. Stat. § 30.77(3)(a)" (Doc. 9:2) by helping "approximately 33 towns enact local ordinances," (Doc. 9:7). *See Keith*, 764 F.2d at 1269 (lobbying "hard" for passage of laws an insufficient interest for intervention) (quoting *36.96 Acres*, 754 F.2d at 857). LWA seeks, but does not have an interest "to forever defend [ordinances] it helped to enact," just as the proposed intervenor in *Keith* did not have an interest justifying intervention for laws they helped enact. *Keith*, 764 F.2d at 1270; *see 36.96 Acres*, 754 F.2d at 859 (Saving the Dunes Council's interest with the large role played in legislation to protect the dune at

issue and guaranteeing the preservation of the dune's beauty and public use of the dune was an insufficient interest).

As the IPC did for abortion, in addition to supporting enactment of laws, LWA's advocacy is "essentially communicative and persuasive," which "seeks to inform people about" *Keith*, 764 F.2d at 1270, wake surfing by lobbying for laws at the local and state level to restrict wake surfing (Doc. 9:7-8). LWA may "speak, lobby, promote, and persuade, so that its principles may become . . . the law of the land," but that does not rise to a direct, significant, and legally protected interest such that LWA may "intervene in every lawsuit involving [wake surfing]." *Keith*, 764 F.2d at 1270. Even if LWA has "demonstrated a history of research, labor, and capital on behalf of" wake surfing, including engaging in or "promoting" activities or programs consistent with its mission, that interest, even if "legitimate and demonstrable," is an insufficient interest to justify intervention as of right. *Lac Courte Oreilles Band of Lake Superior Chippewa Indians v. State of Wis.*, 116 F.R.D. 608, 610 (W.D. Wis. 1987) (hereafter "*Lac Courte Oreilles*") (citing *Keith*, 764 F.2d at 1270; *36.96 Acres*, 754 F.2d at 859).

        ii.   <u>LWA's self-proclaimed "expertise" is not an interest authorizing intervention.</u>

Faced with the prospect that their interest in "statewide advocacy" is insufficient, Plaintiffs anticipate LWA may attempt to fallback on a supposed interest to provide its so-called "expertise" to the Court. (*See* Doc. 9:13) ("the expertise of LWA as set out above will assist the Court in understanding the issues in the case"). Setting aside that the so-called "expertise" of LWA is immaterial and has no apparent benefit to whether the Defendant Town of Scott complied with Wisconsin's statutory requirements for passing such an ordinance or whether the ordinance's vague terms comply with constitutional requirements of due process, providing "expertise" has long-been rejected as and is not a direct, substantial, and legally protected interest. *American Nat.*

*Bank and Trust Co. of Chicago v. City of Chicago*, 865 F.2d 144, 147 (7th Cir. 1989) (hereinafter "American Nat. Bank and Trust Co."*)*. The fact that an outside group "may have a particular expertise is no ground for mandatory intervention. If it were, every potential expert witness would meet the interest requirement." *Id.* Such "group's particular expertise by itself is insufficient to meet the interest requirement." *Id.* (citing *Keith*, 764 F.2d at 1270 (*see also* Cudahay, J., concurring in the result) (IPC denied intervention as of right and permissively despite "intense and expert interest in the issues involved in this litigation") (764 F.2d at 1272)).

If LWA believes its expertise can assist the Town of Scott, "it is free to offer its opinions and expertise to [the] defendant[]," but that does not entitle LWA to intervention as a party. *Lac Courte Oreilles*, 116 F.R.D. 608, 611 (W.D. Wis. 1987) (rejecting intervention as of right as to muskie fishing group).

### iii.    LWA's interest is abstract and a general interest common to all members of the public.

Further, tied to its advocacy interests, LWA appears to argue its interests relate to defending ordinances which allegedly impact the public's use of the waters under the Public Trust Doctrine (*See* Doc. 9:10) (arguing an impairment of "LWA's ability to assist towns in adopting ordinances consistent with the Public Trust Doctrine"). However, that alleged interest "is an 'abstract' and 'general interest common to all members of the public,'" which is not a direct, significant and legally protected interest. *Liebert v. Wisconsin Elections Cmm'n*, 345 F.R.D. 169, 173 (W.D. Wis. 2023) (quoting *Gill v. Whitford*, 585 U.S. 48, 138 S. Ct. 1916, 1931, 201 L.Ed. 2d 313 (2018)).

LWA acknowledges any interest relating to the Public Trust Doctrine is broad. (*See* Doc. 9:9) (alleging in overbroad and conclusory terms that "all these subscribers" signing up for LWA's listserv "are beneficiaries of the Public Trust Doctrine" which "gives users of navigable waters an

interest in the enjoyment of navigable waters."). Such a generalized and abstract right, common to all members of the public as alleged here is an insufficient interest for intervention. *See Liebert,* 345 F.R.D. at 170; *see also Habitat Educ. Center, Inc. v. Bosworth,* 221 F.R.D. 488, 494-95 (E.D. Wis. 2004) (hereinafter "Bosworth") (Ruffed Grouse Society's allegation of impairment of "members' recreational rights" in forest at issue is an insufficient interest, while also rejecting use of the forest as a sufficient interest as it was "indistinguishable from that of the public at large"). That type of advocacy to enact local laws and LWA's "environmental interest" to allegedly preserve lakes "for public use" under the Public Trust Doctrine "may indeed be legitimate and demonstrable," but such use is not a direct, substantial, or legally protectible justifying intervention as of right. *36.96 Acres*, 754 F.2d at 859

LWA also fails to claim its advocacy is narrowed to the Ordinance at issue in the Town of Scott, as the LWA also makes no specific allegations in its motion that it did that type of lobbying in the Town of Scott to pass its Ordinance. But even assuming *arguendo* the LWA had done so in the Town of Scott (see discussion *infra*, Section I.D.iii.), the Seventh Circuit has long-held that type of advocacy for changes in the law and defense of the laws enacted as advocated for by a group such as LWA, is not a direct, significant, and legally protected interest to allow intervention as of right. *See Keith*, 764 F.2d at 1270; *36.96 Acres*, 754 F.2d at 857.

LWA fails to meet its burden to satisfy the "interest" element for intervention as of right under FRCP 24(a)(2) and denial of LWA's intervention is proper.

### C. LWA's "interest" is not impaired.

Since LWA has "failed to assert a direct, significant, legally protected interest, it follows that it has failed to assert an interest that could be impaired or impeded by the lawsuit." *American Nat. Bank and Trust Co.*, 865 F.2d at 147.

Assuming *arguendo* that LWA's "statewide advocacy" to engage in persuasive, educational communications for the purpose of enacting ordinances or regulations is a direct, substantial, and legally protectible interest (which Plaintiffs dispute), such interest is not impaired or impeded by this litigation.

LWA claims a ruling against the Town would "seriously impair LWA's ability to assist towns in adopting ordinances consistent with the Public Trust Doctrine" and summarizes that impairment by concluding "LWA's interest in *advocating for reasonable restrictions* on wake surfing is directly threatened by the lawsuit." (Doc. 9:10) (emphasis added).

LWA's alleged impaired interest does not match the substance of the lawsuit. LWA has not shown that the supposed interest in "advocating for reasonable restrictions" will be impaired by this lawsuit. (Doc. 9:10). This lawsuit does not seek to overturn an ordinance which still allows, but "reasonabl[ly] restricts" wake surfing. The lawsuit seeks to overturn an Ordinance which goes beyond "reasonable restrictions" (Doc. 9:10) and *completely prohibits* such activities (*see* Doc. 2-1:14, ¶¶82-84; Doc. 2-1:37). Nothing in this lawsuit prevents LWA from still being allowed to advocate or petition for "reasonable restrictions on wake surfing" (Doc. 9:10), provided the ordinances petitioned for comport with statutory and constitutional requirements.

The *Lac Courte Oreilles* case summarizes the issue well. Faced with an allegation that a conservation organization's interest in its right to petition the WDNR for "strict regulations" on muskie fishing would be impaired, the court rejected that alleged impairment. *Lac Courte Oreilles*, 116 F.R.D. at 611. "This litigation *will not affect the organization's right to petition the state for regulations*. It will determine the *permissible scope* of state regulation . . . *but within the permissible limits*, [the organization] *may continue to petition for rules it believes would be beneficial*." *Id.* (emphasis added).

Quite plainly, LWA is still allowed to and has the "ability to assist" (Doc. 9:10), i.e., educate and advocate for and/or petition local towns, legislators, the WDNR, the governor's office, and the WCC to engage in "reasonable restrictions on wake surfing" (Doc. 9:10), but must do so "within the permissible limits" that may result from the litigation, that LWA "believes would be beneficial." *Lac Courte Oreilles*, 116 F.R.D. at 611. The LWA fails to show how the LWA will be unable to "assist", i.e., to educate towns, legislators, the WDNR, the governor's office, and the WCC about what LWA sees as its concerns with wake surfing. This lawsuit does not prohibit or otherwise impair any education or advocacy efforts to "assist" towns or other persons. LWA is simply not impeded from educating others or advocating for "reasonable restrictions." (Doc. 9:10)

In a misguided attempt to support its impairment argument, LWA also appears to improperly engage in speculative conclusions that "results of this case *could* have a profound impact on LWA's mission to protect Wisconsin's navigable waters" due to a ruling that "*could* affect all of these ordinance that have been passed, plus numerous others in the process." (Doc. 9:9) (emphasis added).[6] This is a standalone lawsuit against the Town of Scott, not all other ordinances passed or speculative ordinances that have not yet passed. LWA's speculative argument about what could happen with other ordinances (whether passed or not) resulting from a future Court opinion is not an impairment or impediment to LWA's interest. "True, an opinion disagreeing with the legal views entertained by the [LWA] may persuade the judge in subsequent litigation, but the persuasive force of a district court's opinion *does not satisfy* the requirement of Rule 24(a)(2): a 'disposition of the action [that] may as a practical matter impair or impede the

---

[6] Speculative interests and speculative adverse impacts to those interests are not direct, significant, and legally protected interests. *See Sokaogon Chippewa Cmty. v. Babbitt*, 214 F.3d 941, 947 (7th Cir. 2000) (speculative impacts are an improper basis to grant intervention as of right).

applicant's ability to protect [its] interest.'" *Bethune Plaza, Inc. v. Lumpkin*, 863 F.2d 525, 532 (7th Cir. 1988) (emphasis added) (quoting FRCP 24(a)(2)).

LWA has shown no impairment or impediment of its interest, has not met its burden, and denial of LWA's intervention as of right is proper.

### D.  Town of Scott Adequately Represents All Applicable Interests

LWA has publicly lauded the Defendant's attorney to its 1,500 subscribers on its "listserv" (*see* Doc. 9:9): "The Town of Scott is represented by a highly experienced attorney…". (Declaration of Anders B. Helquist In Opposition To Last Wilderness Alliance's Motion To Intervene, ¶2, Exhibit A). LWA has the burden of showing that the Defendant cannot adequately represent LWA's claimed interest, which is based solely on LWA's alleged advocacy throughout the state of Wisconsin seeking to protect ordinances restricting wake surfing, based on the Public Trust Doctrine. (Doc. 9:10-11). In order for LWA to intervene as of right, it must show that the Defendant is not representing those interests. The LWA has not presented any argument that supports this position.

As argued above and noted in LWA's Memorandum, the Public Trust Doctrine is a general interest and "gives users of navigable waters an interest in the enjoyment of navigable waters,", including users of the lakes in the Town of Scott. (Doc. 9:9). Additionally, the instant case is against the Defendant for an outright prohibition of wake surfing in its Ordinance. LWA's claimed interest is to protect "reasonable restrictions" (Doc. 9:10) on wake surfing. Thus, LWA's claim to defend ordinances reasonably restricting wake surfing is not a question before this court. As such, reasonable restrictions on wake surfing are not an interest that needs to be defended in this case.

There are three different tests for courts to determine inadequacy of representation which depend on the relationship between the intervenor and the named party. *Bost v. Illinois Bd. Of*

*Elections*, 75 F.4th 682, 688 (7th Cir. 2023). The three tests are strict, intermediate, and default. A court's determination of which applies, is in part, based on the strength of the relationship. "[T]he stronger the relationship between the interests of the existing party and the interests of the party attempting to intervene, the more proof of inadequacy we require before allowing intervention." *Id*.

There is an additional consideration for courts to decide which test to apply for inadequate representation is, "the interests of the existing party and the applicant are identical, similar or adverse, or whether the applicant's interest is not represented at all." *Bosworth*, 221 F.R.D. at 495. Moreover, "If applicant's interest is not represented at all or if it is adverse to that of the existing party, representation is inadequate. If the interest of the original party and that of the applicant are identical, adequacy of representation is presumed." *Bosworth*, at 495, (citing *Solid Waste Agency*, 101 F.3d at 508.

To summarize, the standards for review of inadequacy of representation, courts look to the strength of the relationship between the named party and the proposed intervenor and if the intervenor's claimed interest is already represented. When the claimed interest is represented, the court must also determine if the interests of the named party and the intervenor are identical. In cases where the named party and the proposed intervenor are adverse to each other, inadequacy of representation is presumed.

Each test and its applicability to this motion are described in detail below.[7] Specifically, Plaintiff will show that there is a relationship between the Defendant and the proposed intervenor, and those parties are not adverse to each other.

---

[7] LWA has the burden to prove inadequate representation, but has only attempted to overcome this burden by arguing for the least restrictive means of intervention under the default rule – that the Town's representation 'may be' inadequate." (Doc. 9:10). Accordingly, LWA's Memorandum has chosen to prevent no factual allegations that overcome any presumptions in the strict or intermediate tests for inadequate

i.   <u>Strict Test Applies to LWA's Proposed Intervention.</u>

Application of the "strict test" applies here and adequate representation exists. The strict test applies, "when the representative party 'is a governmental body charged by law with protecting the interests of the proposed intervenors[.]'" *Bost* 75 F.4[th] 682 at 688 (quoting, *Planned Parenthood*, 942 F.3d at 799). "In those cases, because the existing party is legally required to represent the interests of the would-be intervenor, we presume it is an "adequate representative 'unless there is a showing of gross negligence or bad faith.'" *Id.*; *see United States v. S. Bend Cmty. Sch. Corp.*, 692 F.2d 623, 627 (7th Cir. 1982). *United States*. Also, "Adequacy can be presumed when the party on whose behalf the applicant seeks intervention is a governmental body or officer charged by law with representing the interests of the proposed intervenor." *Keith*, 764 F.2d, at 1270. Thus, the strict test is applicable in the Seventh Circuit when the named party is a governmental body, it has charge to represent those claimed interests, and intervention should be denied unless the governmental body shows gross negligence or bad faith in its response.

At the outset, it is undisputed that the Defendant, Town of Scott, is a governmental body. The Town, through its Town Board which enacted the Ordinance, has broad charge of the affairs of the Town and to defend the Ordinance in the litigation before it, including arguments raised relating to the Public Trust Doctrine. The Town Board "[h]as charge of *all affairs* of the town not committed by law to another body or officer or to a town employee." Wis. Stat. § 60.22(1) (emphasis added). The Town Board also "[h]as charge of any action or legal proceeding to which the town is a party." Further, the enactment of the Ordinance, if it is done in compliance with Wis. Stat. § 30.77 (which Plaintiffs dispute, but both the Town and LWA *identically* contend in their

---

representation (or must rely on what it alleged in its brief). In its reply brief, LWA cannot raise for the first time new "facts" in an attempt to overcome any such presumptions from the two stricter tests. *Gold v. Wolpert*, 876 F.2d 1327, 1331, n.6 (7th Cir. 1989) (new arguments cannot be made for the first time in a reply and "[t]his goes for facts too").

respective defenses that the Ordinance complies with § 30.77),[8] constitutes a delegation in furtherance of the Public Trust Doctrine to the town. *See Menzer v. Vill. of Elkhart Lake*, 51 Wis.2d 70, 82-84, 186 N.W.2d 290, 297 (1971). Thus, to the extent the litigation defending the Town's Ordinance involves an interest in the Public Trust Doctrine, the Town is charged with representing that interest, it does so, and LWA has alleged no facts that demonstrate the Town has engaged in "gross negligence or bad faith," especially when they have raised the same affirmative defenses. *Planned Parenthood*, 942 F.3d at 799.

Application of the strict test in the present case is further supported because the Defendant is defending a public interest:

> When a government agency charged with representing a public interest is a party and the intervenor's interest falls within the public interest, the interests may well be insufficiently distinguishable to justify intervention. The question is whether the applicant's interest is really different from the agency's and, if so, whether the difference is more than slight.

*Bosworth*, 221 F.R.D. at 495.

Pursuant to *Bosworth*, when a governmental body, such as the Town of Scott, is charged with defending a public interest, such as an ordinance enacted through any delegated and properly exercised authority under the Public Trust Doctrine, a third party claiming to defend substantially the same interest, is not a necessary intervening party. 221 F.R.D. at 495. Allowing LWA to intervene would only serve to duplicate arguments and be an inefficient use of the parties' resources, including those of the court. In the present case the Defendant is the Town of Scott, a governmental body. The Town's interest is the defense of the Ordinance, which is an outright ban on the use of wake enhancements on lakes located within the Town's jurisdiction. The use of lakes in the Town of Scott are a public interest protected by the Public Trust Doctrine. The Defendant

---

[8] *Compare* Town's Answers in Doc. 4:17(E) with LWA's Proposed Answer in Doc. 9-1:43(L) mirroring each other. The defenses raised regarding the Public Trust Doctrine are also essentially the same. *Compare* Doc. 4:17(N) and (P) with Doc. 9-1:43(F-G).

avails itself of the Public Trust Doctrine in its affirmative defenses which demonstrates the Town is defending that specific interest, just as LWA does. (*See* Doc. 4:18, ¶¶N and P).

Pursuant to *Planned Parenthood, Bosworth,* and *Keith,* the LWA has not met its burden satisfying the strict test. Because the Defendant is a governmental body which creates the presumption of adequate representation under *Keith*, and the Defendant is defending the same public interest the LWA claims is its unique interest, which fails to demonstrate a distinguishable sufficient difference as required by *Bosworth*. *Keith*, 764 F.2d at 1270; *Bosworth*, 221 F.R.D. at 495.

Therefore, LWA's claim that its interest in the defense of an ordinance and use of the Public Trust Doctrine to do so as not sufficiently represented is demonstrably false. The Defendant is charged with defending the same exact interest claimed by LWA, and LWA has not pointed to any gross misconduct nor neglect in the Defendant's defense in this case. Adequate representation from a governmental body is presumed and it is in defense of a public interest, LWA has no grounds for intervention under the strict test.

ii.    Intermediate Test Applies in the Alternative.

Alternatively, if the Court determines that the strict test does not apply, the intermediate test applies and LWA does not overcome their burden. To determine if the LWA meets the standard set forth by the intermediate test, courts "compare the interests of a would-be intervenor and an existing party, [and] we find that they have 'the same goal' only where the interests are genuinely 'identical.' *Bost*, 75 F.4th at 688. In other words, the burden is on the LWA to show that there is a uniqueness to its claimed interest for intervening in this case that is not identical to Defendant's interests, LWA failed to do so. In other words, when "there is no conflict of interest [] adequacy of representation is presumed." *Solid Waste Agency*, 101 F.3d at 508.

LWA's speculation that the Defendant's defense "may be narrowly focused" on issues other than the Public Trust Doctrine ignores reality. Defendant affirmatively raised defenses using Public Trust Doctrine. (Doc. 4:18, ¶¶N and P). Defendant raised twenty-two (22) affirmative defenses, which reflects they are not going to, and have not made a "narrowly focus[ed]" defense. The fact is LWA's claim that the Public Trust Doctrine is not an interest of the Defendant completely ignores the Defendant's pleadings.

The only other stated interest of the LWA is to defend restrictions on wake surfing in Wisconsin, which is as stated earlier, not at issue in this case as the challenged Ordinance is an outright ban on wake surfing, not a restriction. The interests of the Defendant and LWA are identical, and therefore LWA's interests are adequately represented in this case by the Defendant. Additionally, the LWA identified the experience of the Defendant's attorney in a press release to its members as an assurance that LWA members need not be concerned by the filing of this case. (Helquist Declaration, ¶2, Exhibit A). It is intellectually dishonest for LWA to now claim that the Defendant (or LWA) is not adequately represented when the Town has "highly experienced" counsel representing it in this matter. (*Id.*)

Furthermore, LWA made no allegation that it was adverse to Defendant's interests or in conflict with them. Because LWA's interests and Defendant's interests are identical and LWA is not adverse to Defendant, intervention is not necessary in this case and LWA has not met its burden under the intermediate test for intervention as of right.

   iii. <u>Default Test is Not Applicable for the LWA's Attempt to Intervene</u>

The default test is not applicable for LWA's proposed intervention, and even if it was the applicable standard, the LWA has not met its burden. The least restrictive of the standards is the default test, this applies when there is no notable relationship between the named party and the

intervenor. *Bost*, 75 F.4th at 688. The default test only requires that the intervenor show, "that representation of his interest [by the existing party] '*may be*' inadequate." *Planned Parenthood*, 942 F.3d, at 799 (emphasis added). The default test is a minimal burden, but it is not nonexistent, it is satisfied when the named party fails to further the intervenor's interest. *Bost*, 75 F.4th at 690 (citing generally, *Berger v. N. Carolina State Conf. of the NAACP*, 142 S. Ct. 2191, 213 L.Ed.2d 57 (2022)).

*First,* LWA plays a game of "hide the ball" from this Court by not alleging any facts related to whether there is a notable relationship between itself and the Town so the Court can make a determination regarding the first element of this default test – whether there is or is not a "notable relationship." *Bost,* 75 F.4th at 688. LWA apparently asks this Court to assume there is no notable relationship without claiming the same, but such an omission is material and appears to be aimed at misdirecting this Court in its assessment of the default rule. That failure to at least affirmatively allege it has no relationship with the Town should end the discussion of whether the LWA met its burden that no "notable relationship" exists to meet the first element of the default test. *Bost,* 75 F.4th at 688.

But further development of the facts may assist this Court as it assesses the type of "officious intermeddler" seeking to intervene here and whether intervention is warranted for LWA, especially when the Court reviews permissive intervention, *infra*. *Sierra Club,* 358 F.3d at 518. There is an apparent, notable relationship between the Defendant and the LWA, which means the default test does not apply. *See Bost*, 75 F.4th at 688. The evidence of this apparent and notable relationship between the Defendant and the LWA is hidden from the Court through omission by LWA. Upon information and belief, Richard F. Phillips (hereinafter "Phillips") is an agent of the LWA and is on its Board of Directors. *See* "Our History," Last Wilderness Alliance, *available at*

https://lastwildernessalliance.org/about (last accessed July 9, 2025). Phillips, unlicensed to practice law in Wisconsin,[9] advised the Defendant on and likely drafted the Ordinance at issue in this case, as he is listed as an "author" in the metadata for one version of the Ordinance. (*See* Helquist Declaration, ¶¶ 3-5, Exs. B-D). On at least one occasion, Phillips presented arguments in support of the Ordinance at a town hall meeting of the Defendant. (Doc. 2-1:10, ¶28).  Because the Defendant passed the wake ban ordinance that was promoted by, if not fully drafted by, the LWA, there is little doubt a notable relationship between Defendant and the LWA exists and the default rule does not apply. *Bost*, 75 F.4th at 688. Such material omissions from LWA regarding its relationship with the Town, apparently hoping they will slip by the Court unnoticed in its assessment of the default rule, should not be rewarded by this Court, either through granting intervention as of right or permissively.

*Second,* LWA does not adequately explain how its interests "may be" inadequately represented. LWA bases its argument of inadequate representation primarily on "LWA's focus is more broadly based on the Public Trust Doctrine" which "include[es] the protection of the State's natural resources and the rights of all to the reasonable use of our navigable waters." (Doc. 9:11). As previously noted, the Defendant raised twenty-two (22) affirmative defenses under the Public Trust Doctrine, this is hardly a broad focus. (Doc. 4:18, ¶¶N and P). And again, those defenses are identical or essentially identical to what LWA has raised in its Proposed Answer and LWA fails to state how the Town's raising of the identical or essentially identical defenses "may be" inadequate. LWA's claim that the Defendant is not furthering LWA's interest in its defense fall flat in light of the actual pleadings.

---

[9]    *See*    "Lawyer    Search,"    State    Bar    of    Wisconsin,    *available    at* https://www.wisbar.org/Pages/BasicLawyerSearch.aspx?firstName=rich&lastName=phillips    (last accessed July 9, 2025).

LWA raises an apparent "interest" and engages in hyperbolic speculation that the Complaint "represent[s] a threat to the very existence of LWA" (Doc 9:11) or that if "Plaintiffs prevail it will put LWA out of business." (Doc. 9:12). That argument does not allege how the Defendant's interests may be inadequate in defense of the lawsuit at issue. Further, as noted above, allegations that a particular lawsuit or non-intervention will "threaten the existence" of a proposed intervenor have been rightly rejected by the Seventh Circuit. *Keith*, 764 F.2d at 1269.

LWA has not raised a single legitimately unique interest that is not already represented by the Defendant. Thus, even if the default rule were applicable to the LWA's request for intervention as of right, it would fail.

## II.     LWA IS NOT ENTITLED TO PERMISSIVE INTERVENTION

LWA has also argued in the alternative for a permissive intervention into this case. Under FRCP 24(b)(1)(B), this Court has discretion to allow LWA's intervention if the claimant "has a claim or defense that shares with the main action a common question of law or fact." The district court's power in a permissive intervention is "wholly discretionary." *Planned Parenthood*, 942 F.3d at 803. Pursuant to FRCP 24(b)(3), the court's only required consideration is "Delay or Prejudice. In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." The Court, however, is not limited to considering the factors in FRCP 24(b)(3), as it can weigh multiple factors as it sees fit, including references to its reasoning on intervention as of right, provided the Court is clear it is exercising its discretion in its discussion of permissive intervention. *Planned Parenthood*, 942 F.3d at 804. In some instances, "'the case for permissive intervention disappears' when a proposed intervenor fails 'to overcome the presumption of adequate representation by the government.'" *Id.*

22

at 803 (citations omitted) (later affirming district court's reasoning for denying permissive intervention).

Adding LWA as an intervenor comes with an indisputable cost and time added to the proceedings, as "[a]n intervenor acquires the rights of a party." *Solid Waste Agency*, 101 F.3d at 508. "Increasing the number of parties to a suit can make the suit unwieldly." *Id.* As Plaintiffs litigate an action which lies solely against the Town for its actions, LWA's intervention will likely double the work required of Plaintiffs' counsel (and this Court), as written discovery, depositions, and responses to anticipated motions and briefs (and reviewing the same by this Court) will unnecessarily add to the burden Plaintiffs face as they litigate claims intended solely against the Town.

Further, adding LWA as a party creates a significant potential barrier that could "impede settlement" and LWA could "continue the litigation even if the party on whose side he intervened is eager to settle." *Solid Waste Agency*, 101 F.3d at 508. "Why should the [LWA] receive an entitlement to nix a settlement (if one can be reached) that the [Town] and the [Plaintiffs] all favor? Officious intermeddlers ought not be allowed to hijack litigation that the real parties in interest can resolve to mutual benefit." *Sierra Club*, 358 F.3d at 518.

Further still, LWA is not a needed party in this case, as the Defendant represents a full range of interests implicated in this case, not only because it is a governmental body, but also because in its pleadings it has asserted the same defenses that LWA claims it can only represent. LWA's Memorandum points to no unique arguments it wishes to raise. Adding LWA would only add to the procedural complexities of this case and without any benefit to the existing parties. *See Liebert*, 345 F.R.D. at 173.

LWA cites its own supposed "expertise" and "experience" as assisting the court to "understand the issues in the case" (Doc. 4:13), this insufficient basis is not a legal interest sufficient for intervention. *See American Nat. Bank and Trust Co.,* 865 F.2d at 147 (Union's "particular expertise is no ground for mandatory intervention. If it were, every potential expert witness would meet the interest requirement. This Court has held that a group's particular expertise by itself is insufficient to meet the interest requirement," while the court denied intervention); *see Keith* 764 F.2d at 1270 and 1272 (denying mandatory and permissive intervention to prolife group despite "intense and expert interest in the issues involved in this litigation").

Allowing LWA to intervene in this case will not result in any new interest being represented, it will only result in added, duplicative cost and time to the parties and the court. The proposed intervenor's argument is that it has an expertise in the subject matter, but as discussed above, this is insufficient as grounds for intervention. LWA claims its interest is in representing the Public Trust Doctrine, this is not unique, as noted the Defendant raised the Public Trust Doctrine in its affirmative defenses. The affirmative defenses raised are identical or essentially identical. The LWA also argued that it has an interest in defending ordinances "reasonably restricting" wake surfing, which is not at issue in this case regarding an ordinance that is an outright ban on wake surfing. There is no benefit to this case by allowing LWA to intervene, therefore they should not be allowed to permissively intervene.

## CONCLUSION

For the reasons set forth above, this Court should deny LWA's request for intervention as of right under FRCP 24(a)(2) and permissive intervention under FRCP 24(b)(1)(B).

Dated this 9th day of July, 2025.

WELD RILEY, S.C.

By:    */s/ Anders B. Helquist*
       Anders B. Helquist
       WI State Bar # 1070854
       John Robert Behling
       WI State Bar # 1036097
       Jeffrey A. Cormell
       WI State Bar # 1101522

3624 Oakwood Hills Parkway
Eau Claire, WI 54701
715-839-7786
ahelquist@weldriley.com
jbehling@weldriley.com
jcormell@weldriley.com
*Counsel for Plaintiffs*