UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

CHAD M. MCEVER,
SCOTT OPPENHEIMER,
PEGGY O OPPENHEIMER LIVING TRUST,

                Plaintiffs,                Case No.: 25CV508 jdp

vs.

TOWN OF SCOTT,

        Defendant.

## MEMORANDUM OF LAST WILDERNESS ALLIANCE IN REPLY TO PLAINTIFF'S MEMORANDUM IN OPPOSITION TO MOTION TO INTERVENE

### INTRODUCTION

The plaintiffs characterize the Last Wilderness Alliance ("LWA") as an "officious intermeddler," borrowing the label from *Sierra Club, Inc v. EPA*, 358 F. 3d 516, 518(7th Cir. 2004). The irony cannot be overlooked: it is the plaintiffs' counsel that has threatened to challenge every municipal ordinance in Wisconsin that regulates wake surfing. (Wisconsin Public Radio, May 30, 2025, updated 1:32 PM). https://www.wpr.org/news/wake-boat-owners-sue-northern-wisconsin-town-to-overturn-ban-on-wake-surfing.) Nor is *Sierra Club* helpful to the plaintiffs, as the "officious intermeddlers" there---the Illinois Chamber of Commerce among them---sought to intervene in a dispute over the issuance of a single permit for a power plant. 358 F.3d at 517. Here LWA seeks to intervene primarily to protect constitutional rights that are enshrined in the Public Trust Doctrine. LWA's interest in this litigation is no less than that of any other party.

1

ARGUMENT

**I.**      **The Last Wilderness Alliance Should be Allowed to Intervene as a Matter of Right.**

There is no dispute that LWA's motion to intervene is timely. The plaintiffs contend that LWA does not have the right to intervene on the grounds that it does not have a direct, significant and legally protectable interest in the lawsuit. They also claim that LWA's interest will not be impaired by the lawsuit and that the Town of Scott adequately represents LWA's interests.

A. LWA has a Direct, Significant and Legally Protectable Interest in the Lawsuit.

LWA has a significant, legally protectable interest in this lawsuit. In this context, the Seventh Circuit has followed the Supreme Court's stance of "encouraging liberality in the definition of an interest." *Meridian Homes Corp. v. Nicholas W. Prassas & Co.,* 683 F.2d 201, 204 (7th Cir. 1982). Although a record of advocacy has been held to establish such an interest, *Western Energy All. V. Zinke,* 877 F.3d 1157, 1165-66 (10th Cir. 2017), LWA's interest is more than that of a lobbyist or advocate, as plaintiffs describe it. LWA's interest in this litigation stems from the Public Trust Doctrine and its applicability to this dispute.

The plaintiffs have alleged that the Town's ordinance violates their substantive constitutional rights, including the right to use the lake where they own property to wake surf. LWA submits based on its expertise that that activity, particularly on a very shallow lake,[1] is destructive to the natural resource. LWA's interest in protecting the lakes within the Town of Scott, and other navigable waters throughout Wisconsin, is premised on the constitutional right of its members to the use and protection of these natural resources as guaranteed by the Public Trust Doctrine. *See Muench v. Public Serv. Comm'n,* 261 Wis. 2d 492, 512, 55 N.W.2d 40 (1952). The right of the citizens of the state to the enjoyment of navigable waters is a "legal right." *State v.*

---

[1] The average depth of Birch Island Lake is 6 feet. (Declaration of Richard Phillips ¶ 6).

*Village of Lake Delton*, 93 Wis. 2d 78, 91, 286 N.W.2d 622 (1979). That legal right is "directly affected" by a decision impacting the use of navigable waters. *Muench, supra.* LWA seeks to promote and enforce its rights through education and advocacy--- and by intervening in a lawsuit such as this. LWA has a legally protected interest in the outcome of this case; it is not merely an advocate for a cause.

The plaintiffs' reliance upon *Keith v. Daley,* 764 F.2d 1265 (7th Cir. 1985), overstates the relevance of that decision. First, the determination whether a proposed intervenor's "interest" is sufficient is "highly fact-specific" such that "comparison to other cases" is "of limited value." *Security Ins. Co. of Hartford v. Schipporeit, Inc.,* 69 F.3d 1377, 1381 (7th Cir. 1995). Second, the proposed intervenor in *Keith* was a pro-life organization seeking to intervene in a case involving the enforcement of statute regulating abortion. *Keith,* 764 F.2d at 1267. The intervenor's interest was as a lobbyist in favor of the statute. *Id.* at 1269. The attorney general of Illinois was a party to the case who was obligated to defend the statute. Unlike here, the intervenor did not have a vested, constitutional right belonging to it that was at stake in the litigation.

As well, the dispute in *Keith* pertained to a single piece of legislation with no consequences to other existing or pending laws. Likewise, in *United States v. 39.96 Acres of Land,* 754 F.2d 855, 857 (7th Cir. 1985), the prospective intervenor sought to become party to a case involving the disposition of a single parcel of land. These cases, and the decisions emanating from them, would not have a consequential impact on a multitude of other regulations or matters the prospective intervenors sought to preserve. That is not the situation here, where fifty-seven other ordinances in which LWA has a substantial interest will be affected by the outcome of this case.

Finally, LWA's interest in this litigation is more than just a general interest in a piece of legislation, shared with other members of the public. LWA's interest derives from the

constitutionally protected rights of the public in the protection of navigable waters. That LWA might share that interest with others, even other parties, does not matter as long as LWA's interest is premised on its own rights. *Bost v. Illinois State Bd. of Elections,* 75 F.4th 682, 687 (7th Cir. 2023). That is the situation here.

    B.  The Disposition of this Lawsuit May Impair or Impede LWA's Interests.

The plaintiffs argue that LWA may continue to engage in statewide advocacy and education regardless of the outcome in this case. They also claim that this case involves an ordinance passed by a single township that will not impact existing or future ordinances regulating wake surfing. A prospective intervenor faces a minimal burden in showing that it has an interest that may be impaired or impeded by the resolution of a case. *Kane County, Utah v. United States,* 928 F.3d 877, 891 (10th Cir. 2019). Apart from overlooking LWA's rights regarding the protection of navigable waters within the Town of Scott, the plaintiffs seek a ruling on multiple causes of action that could apply with equal force to the other fifty-seven ordinances restricting wake surfing, regardless of the size or depth of the lakes impacted. Such a ruling would profoundly impact LWA's constitutionally-based interest in the protection of many other navigable waters in Wisconsin.[2]

The complaint alleges ten causes of action, including that the ordinance is unconstitutionally vague, that it violates the plaintiffs' constitutional rights both procedural and substantive, that it is arbitrary and capricious, and that it is contrary to the authority delegated under Wis. Stat. § 30.77(3)(cr). The ordinance in dispute is very similar to those passed in numerous other Wisconsin towns, with the assistance of LWA. Fifty-seven towns have used the

---

[2] Under the current version of Rule 24(a)(2), "stare decisis may now...supply that practical disadvantage which warrants intervention of right." *Atlantis Development Corp., Ltd. V. United States*, 379 F.2d 818, 829 (5th Cir. 1967). Professors Wright, Miller & Kane also provide a list of cases said to stand for the proposition that stare decisis effects may satisfy the rule. See Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, FC Federal Practice and Procedure Sec. 1908 at 302-03 n. 60 (2d ed. 1986).

democratic process outlined in Wis. Stat. §30.77(3) to adopt enhanced wake ordinances. (R. Phillips Dec. ¶ 7). Other towns are considering similar ordinances but have put the decision on hold pending the outcome of this litigation. (R. Phillips Dec. ¶ 4). There are over 15,000 lakes in Wisconsin, and 2,200 of these are over 50 acres and potentially open to wake surfing. (R. Phillips Dec. Exh. A). Many lakes protected by wake surfing ordinances are located in the Western District of Wisconsin. (R. Phillips Dec. Exh. B). If the plaintiff were to succeed on any of its substantive constitutional challenges or on its claim that a town may not ban wake surfing under the statutory authority allocated to it, all of these ordinances are at risk, as well as LWA's right to the protection of navigable waters.

C. The Town of Scott Does Not Adequately Represent LWA's Interests.

Much of the Plaintiffs' brief addresses the adequacy of representation of the Town of Scott. LWA recognizes that the Town has experienced, well-qualified legal representation. But that is not the determining factor in this analysis. An attorney's obligation is to his client, and LWA is not represented by the Town's attorney.

The plaintiffs argue that the Town is charged with representing the public's interests under the Public Trust Doctrine, and that the obligation informs the Court as to the burden LWA shoulders to demonstrate that its interests are not adequately represented by the Town. In fact, the Town is not delegated the responsibility to enforce the Public Trust Doctrine. It is "the State's duty under the public trust doctrine to protect our valuable water resources." *Lake Beulah Management District v. Department of Natural Resources,* 2011 WI 54, ¶ 31, 335 Wis. 2d 47, 799 N.W.2d 73; *see also Village of Lake Delton,* 93 Wis. 2d at 91 (primary power to administer public trust doctrine "reposes in the legislature.") Wis. Stat. § 30.77 permits, but does not require municipalities to enact local ordinances governing boating. Since the State is not a party to this action, there is no

governmental body involved in this case that is charged by law with protecting LWA's interests under the Public Trust Doctrine. *See Planned Parenthood of Wisconsin, Inc. v. Kaul,* 942 F.3d 793, 799 (7th Cir. 2019)(presumption of adequate representation applies when governmental body charged by law with protecting proposed intervenor's interests is a party to the case). Accordingly, there is no presumption of adequate representation in this case based on the participation of a governmental entity.

Alternatively, the plaintiffs contend that the Town and LWA share the same goal, and that LWA therefore bears the intermediate burden to show that its interests are not identical to the Town's. LWA has acknowledged that it and the Town have overlapping interests, but having overlapping interests is not synonymous with having identical interests. *See Driftless Area Land Conservancy v. Huebsch,* 969. F.3d 742, 748 (7th Cir. 2020). As well, seeking the same outcome in the case does not equate to having the same goal. *Id.* Courts must look to whether there are important differences in the objectives of the proposed intervenor and others that are party to the litigation. *Id.*

Here, the Town's objective is to defend its ordinance, or at least some parts of it as, by its terms, any aspect of the ordinance found to be unenforceable does not impact the remainder. (Dkt. 2, Exh. 1, Sec. 4). LWA's objective is far more comprehensive, in that it seeks to avoid a ruling that would favor the rights of a few individuals to wake surf over the rights of all to the protection of the natural resources. LWA has a substantial investment of time and money into furthering its objective, a factor found to be of significance to this issue in *Driftless.* 969 F.3d at 748. Here, it is a stretch to claim that LWA's interest is identical to the Town's, particularly where the Town has no legal obligation to uphold the Public Trust Doctrine.

In this case, the Court should apply the default rule requiring only a showing that the

6

Town's representation may be inadequate. That is the rule set forth in *Trbovich v. United Mine Workers of Am.,* 404 U.S. 528, 538 n. 10, 92 S.Ct. 630, 30 L.Ed.2d 686 (1972), which described the requirement as "minimal." As stated, the Town of Scott is obligated to look out for its own interests and is not charged with protecting the interests of the 57 municipalities that have adopted enhanced wake ordinances and the others that are considering an ordinance. The claims set forth in the complaint, coupled with the public statements made by plaintiffs' counsel, pose a threat to all of the ordinances imposing wake surfing restrictions. For the reasons discussed herein and in LWA's initial brief, it has satisfied the minimal requirement of showing that the Town's representation may be inadequate.

## II.    The Court Should Permit LWA to Intervene.

LWA also seeks to intervene permissively. Permissive intervention is left to the Court's discretion. *United States v. City of Chicago,* 796 F.2d 205, 211 (7th Cir. 1986). The standards for permissive intervention are quite relaxed. A party may be allowed to intervene if it has "a claim or defense that shares with the main action a common question of law or fact." Rule 24(b)(1)(B), Fed. R. Civ. Proc. The only factors this Court must consider in regard to permissive intervention are "whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." Rule 24(b)(3), Fed. R. Civ. Proc. "(U)nlike the more mechanical elements of intervention as of right"…the rule regarding permissive intervention "leaves the district court with ample authority to manage the litigation before it." *Bost,* 75 F.4[th] at 690-91.

In *Solid Waste Agency of Northern Cook County v. United States Army Corps of Engineers,* 101 F.3d 503, 509 (7th Cir. 1996), the court of appeals described the relaxed standard for permissive intervention as follows:

> We are not done. The appellants also sought permissive intervention. The district judge denied intervention on this basis because of the appellants' lack (as the judge

thought) of an "interest" sufficient to justify intervention. But "interest" does not appear in Rule 24(b). All that is required for permissive intervention, so far as bears on this case, is that the applicant have a claim or defense in common with a claim or defense in the suit. Fed. R. Civ. P. 24(b) (2). If this condition is satisfied, as it appears to be, the judge must then decide as a matter of discretion whether intervention should be allowed.

There is no question that LWA has asserted defenses raising questions of law that it shares with the main action, and the plaintiffs have made no argument to the contrary. Their objection to permissive intervention is three-fold: 1) LWA's involvement will compound the amount of work to be done in the case, adding time and additional cost; 2) LWA's involvement could impede a settlement; and 3) LWA's involvement is unnecessary. None of these arguments are persuasive.

First, the plaintiffs have made no case for the proposition that adding LWA as a party will cause undue delay. Discovery and motion practice allowed pursuant to the rules of civil procedure does not constitute undue delay. Nor does the addition of one party make the case unwieldy. The plaintiffs have made sweeping constitutional and statutory claims that deserve thorough scrutiny. In response, LWA and the Town have raised appropriate defenses, some of which are similar, as plaintiffs have noted. After having filed a thirty-page complaint replete with ten causes of action and 189 allegations, it is disingenuous for the plaintiffs to argue that adding a party with a profound interest in the outcome of those constitutional and statutory claims would make this case unwieldy.

LWA also has no interest in unduly prolonging this litigation. To the contrary, it wants an expeditious result so that so that similar ordinances under consideration can proceed and numerous existing ordinances may be enforced without threat of repercussion.

Second, it is hard to imagine how LWA's addition as a party will impede settlement, as it is inconceivable that settlement can take place.  As a necessary prelude to this case the plaintiffs served upon the Town a Notice of Claim, which process afforded the plaintiffs and the Town 120 days to resolve the matter before a suit could be filed.  Wis. Stat. § 893.80. Apparently, nothing

happened and the lawsuit was filed.  That is not surprising as the plaintiffs allege that they use their boats to wake surf only on Birch Island Lake (Dkt. No. 2, ¶¶ 55-56, 61-62), a lake with an average depth of six feet (R. Phillips Dec. ¶ 6), and they demand that the ordinance banning wake surfing on that lake be nullified. It is hard to imagine a compromise that would be acceptable to either party. Also, if it is the intention of the plaintiffs, as expressed by their counsel, to challenge ordinances restricting wake surfing throughout the State, they will want to use a decision on the merits of this case in their favor to enhance their more expansive objective. LWA has no intention of impeding any settlement, but the contours of a potential settlement in this case are unimaginable.

Finally, LWA's addition as a party will be helpful to the proper resolution of this case and will promote judicial economy. LWA has much to offer.  It is undisputed that LWA has vast, unique experience in the adoption of enhanced wake ordinances. The Town of Scott does not. LWA has the services of Carl J. Watras, a PhD. limnologist with incredible credentials. Since 1980, he has published over 80 research papers in peer-reviewed technical journals, made 60 presentations at professional conferences, served as a peer-reviewer for 20 scientific journals and as editor of two special publications. (Dkt. 14, ¶ 2). Dr. Watras chaired the Presque Isle Ordinance Committee that led to the adoption of the Presque Isle enhanced wake ordinance. (Dkt. 14, ¶ 3-8). LWA also has engineers and individuals intimately involved with enhanced wake issues on a local level. (Dkt. 10-14). LWA has a database of information regarding wake surfing and has access to test results showing the impacts of wake surfing on lake bottoms and shorelines. (Dkt. 10). LWA brings information and expertise to the case that the existing parties do not have.

Unquestionably, this is a case of statewide significance. The outcome will impact existing and potential ordinances on lakes throughout Wisconsin, many of which are in the Western District of Wisconsin. Without LWA's participation in this case, the prospect of additional litigation over

similar issues is enhanced, not diminished. Moreover, the parties litigating issues of statewide importance ought not be limited to three residents of other states and a small township. This Court should exercise its discretion and allow LWA to intervene in this matter.

CONCLUSION

For the foregoing reasons, the Last Wilderness Alliance respectfully requests that the Court GRANT its motion to intervene.

Dated this 16th day of June, 2025.

s/ Daniel P. Bach
Attorney Daniel P. Bach
WI State Bar #1005751

**LAWTON CATES, S.C**
146 E. Milwaukee Street, Suite 120
Jefferson, WI 53549
Tel: (920) 674-4567
dbach@lawtoncates.com

Attorneys for Defendant Intervenor