IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

CHAD McEVER and SCOTT OPPENHEIMER,

                Plaintiffs,

    v.

TOWN OF SCOTT,

                Defendant.

OPINION and ORDER

25-cv-508-jdp

---

Plaintiffs Chad McEver and Scott Oppenheimer both own boats that they use to wakesurf on Birch Island Lake, which is in the town of Scott, Wisconsin. In 2024, the town enacted an ordinance that restricts wakesurfing on Birch Island Lake, as well as several other area lakes. Plaintiffs contend that the ordinance violates the Due Process Clause, their constitutional right to travel, and various state laws. The case was removed from state court based on federal question jurisdiction under 28 U.S.C. § 1331 and supplemental jurisdiction under 28 U.S.C. § 1367.

The town moves for summary judgment on both procedural and substantive grounds. Procedurally, the town contends that plaintiffs lack standing to sue because they have not shown a risk that the ordinance will be enforced against them. Substantively, the town contends that plaintiffs cannot show that the ordinance violates their federal constitutional rights. The town asks the court to decline to exercise jurisdiction over the state-law claims if the court decides the merits of the state-law claims.

The court concludes that plaintiffs lack standing to sue. At a minimum, plaintiffs must show a credible threat that the ordinance will be enforced against them. But it is undisputed that the ordinance has not been enforced against anyone since it was enacted, and the town

board members have disavowed any intent to enforce the ordinance for the foreseeable future. In fact, the town's position is that it has no legal authority to enforce the ordinance because the town has no law enforcement officers, and no other town officials are authorized to issue citations. Under these circumstances, the threat of enforcement is speculative, so the court will dismiss the case for lack of standing. This makes it unnecessary to consider the town's arguments on the merits.

## UNDISPUTED FACTS

The facts below are not genuinely disputed.

Chad McEver owns real property that abuts Birch Island Lake in the town of Scott. Scott Oppenheimer is a trustee of a trust that owns property abutting the lake. Both plaintiffs have been wakesurfing on the lake for more than ten years.

Wakesurfing is a watersport in which a surfer has his or her feet on top of a wakesurfing board that is traveling behind a boat but is not attached to it. The boat travels at a speed of approximately 8 to 12 miles (about half the speed a boat travels for wakeboarding, where the boarder is attached to the boat). The wakesurfer rides the wave created by the boat.

Like most boats used for wakesurfing, plaintiffs' boats have ballast tanks that can be filled with water. The purpose of the filled ballast tanks is to increase the weight and draft of the rear of the boat, so the boat creates a bigger and stronger wake behind the boat. The larger wake propels the surfer without the need for a rope.

In November 2024, the town board voted two to one to approve an ordinance containing the following restrictions:

Certain Artificial Wake Enhancement Prohibited

(1) Prohibited Equipment. No person may use or employ ballast tanks, ballast bags or fins to cause a boat to operate in a bow-high manner, or which increases or enhances a boat's wake.

(2) Prohibited Operation. No person may operate a boat in an artificially bow-high manner having the effect of increasing the boat's wake. Such prohibited operation shall include wake enhancement by use of ballast tanks, or ballast bags, or mechanical fins, or continuous operation at transition speed (the speed below planing speed in which a boat is operating in plowing mode).

(3) Certain Operations Excluded. In no event shall any of the following operations be deemed a violation of this Ordinance, provided such operations do not use or employ ballast tanks, ballast bags or wake enhancing fins: i) water skiing, ii) tubing, iii) wake boarding employing a tow rope; iv) brief transition operation to empty a boat of bilge water, or v) brief transition operation of a boat accelerating into a planing condition.

The stated purposes of the ordinance was to protect the lakes from environmental damage caused by larger wakes and to prevent safety hazards caused by larger wakes and higher bows that can obscure vision.

The ordinance has not been enforced since it was enacted. Both plaintiffs continue to wakesurf on the lake.

ANALYSIS

A threshold requirement in every federal case is that the plaintiffs have standing. This means that they have suffered or will likely suffer an "injury in fact" that the defendants' challenged conduct caused and could be remedied if the plaintiffs prevail in the lawsuit. *Gadelhak v. AT&T Servs., Inc.*, 950 F.3d 458, 461 (7th Cir. 2020). This rule applies to plaintiffs' state-law claims too, even if a different rule would apply in state court. *Protect Our Parks, Inc. v. Chicago Park Dist.*, 971 F.3d 722, 731 (7th Cir. 2020).

3

In this case, the town contends that plaintiffs do not have standing to sue because the town has never enforced the ordinance against them or anyone else, and it has no plans to do so. In fact, the town says that it could not enforce the ordinance even if it wanted to because no one has the authority to enforce it.

It is undisputed that the town has not enforced the ordinance against plaintiffs since it was enacted and that plaintiffs have not yet suffered any injuries because of the ordinance. In some cases, a plaintiff's decision to change his conduct to avoid violating the law can qualify as an injury. *See Brown v. Kemp*, 86 F.4th 745, 761 (7th Cir. 2023). But in this case, both plaintiffs admit that they have continued to use their boats for wakesurfing since the ordinance was passed, and they have not suffered any adverse consequences as a result. Dkt. 76, ¶¶ 48–49, 69–70; Dkt. 80, ¶ 137. They do not identify any behavior they have changed or intend to change.

Plaintiffs rely on the possibility of future enforcement against them as their basis for standing. Future harm can qualify as an injury in fact, but the general rule is that the threatened harm must be "certainly impending" or there must be a "substantial risk" of future harm. *See Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014). A threat of legal enforcement can qualify as an injury in fact when there is "a credible threat of prosecution." *Holder v. Humanitarian L. Project*, 561 U.S. 1, 15 (2010). But that is usually in the context of potential criminal prosecutions or when the plaintiffs' conduct is "arguably affected with a constitutional interest," such as free speech. *See Babbitt v. United Farm Workers Nat. Union*, 442 U.S. 289, 298–99 (1979); *Soc'y of Divine Word v. United States Citizenship & Immigr. Servs.*, 129 F.4th 437, 445–46 (7th Cir. 2025); *Brown*, 86 F.4th at 761; *American Civil Liberties Union of Illinois v.*

*Alvarez*, 679 F.3d 583, 590–91 (7th Cir. 2012); *Ezell v. City of Chicago*, 651 F.3d 684, 695–96 (7th Cir. 2011); *Bell v. Keating*, 697 F.3d 445, 451 (7th Cir. 2012).

In this case, plaintiffs say that the ordinance "arguably implicate[s]" their constitutional right to travel, Dkt. 69, at 5, but that argument is not persuasive. The Supreme Court has identified three components of the right to travel: (1) the right of a citizen of one State to enter and to leave another State: (2) the right to be treated as a welcome visitor rather than an unfriendly alien when temporarily present in the second State; and (3) for those travelers who elect to become permanent residents, the right to be treated like other citizens of that State. *Hope v. Comm'r of Indiana Dep't of Correction*, 9 F.4th 513, 523 (7th Cir. 2021) (*citing Saenz v. Roe*, 526 U.S. 489, 500(1999)). The ordinance does not affect any of those rights.

It is an open question in this circuit whether there is an intrastate right to travel. *See Hannemann v. Southern Door County School Dist.*, 673 F.3d 746, 756–58 (7th Cir. 2012). But even assuming that there is such a right, the ordinance does not affect that right either. The ordinance restricts enhanced wakes. The ordinance does not inhibit plaintiffs' ability to travel or prevent them from going anywhere. Plaintiffs may still go to any part of the lake that they wish to go to. The court of appeals and this court have rejected claims based on the right to travel involving much more significant restrictions. *Hanneman*, 673 F.3d at 756–58 (right to travel not implicated by ban on entering school property); *Haffner v. Bell*, No. 22-cv-640-jdp, 2024 WL 1556439, at *9–10 (W.D. Wis. Apr. 10, 2024) (right to travel not implicated by ban on going to a fire station or the scene of a fire).

Regardless of whether plaintiffs have to show "certainly impending" harm, a "substantial risk" of harm, or a "credible threat of prosecution," plaintiffs have not shown they

have standing to sue. There is virtually no risk that the ordinance will be enforced against plaintiffs or anyone else wakesurfing on Birch Island Lake for the foreseeable future.

It is undisputed that no one has been penalized or threatened to be penalized for wakesurfing in the town since the ordinance was enacted in November 2024. This fact alone distinguishes plaintiffs' situation from the cases they are relying on. *See Driehaus*, 573 U.S. at 165–66 (administrative enforcement body found probable cause that plaintiffs were violating statute); *Brown*, 86 F.4th at 753–55 (law enforcement officers repeatedly stopped and questioned plaintiffs, seized their property, and threatened to issue a citation); *Bell*, 697 F.3d at 450 (plaintiffs had previously been arrested under challenged law).

As for future enforcement, two of the three town board members testified that there are no plans to enforce the ordinance. Board chairperson Scott Barton testified, "We have no future agenda to enact any enforcement on these lakes at this point." Dkt. 42, at 108:21–22. Supervisor John Vanous testified, "I won't do it," in response to a question whether he would enforce the ordinance. Dkt. 40, at 15:13–17. The third board member, Deni Olson, was not deposed, but Olson voted against the ordinance, Dkt. 76, ¶ 79, and neither side cites any evidence that Olson is looking for ways to enforce the ordinance.

Plaintiffs cite different testimony from Barton that "you have to take enforcement action before this gets out of hand." Dkt. 42, at 106:9–13. Plaintiffs say this statement suggests that "enforcement remains a possibility." Dkt. 69, at 6. But the testimony plaintiffs cite is Barton's explanation for why he supported the ordinance in the first place, even though wakesurfing has not been a problem in Scott. Dkt. 42, at 105:14–107:5. When plaintiffs' counsel asked Barton specifically "what it would take for the town to enforce the ordinance," Barton answered with the statement quoted above that there was no "agenda to enact any

enforcement." *Id.* at 108:19–22. Barton made similar statements that there is "no plan" to enforce the ordinance Dkt. 42, at 71:1–3, and "at this point, there's no enforcement and that's all I can tell you," *id.* at 97:13–14.

The town also says that it *can't* enforce the ordinance, even if it wanted to. This argument requires some unpacking.

The only penalty authorized by the ordinance is a $500 forfeiture for a first offense and a $1,000 forfeiture for subsequent offenses within one year. Dkt. 57-3.[1] Under Wis. Stat. § 66.013(2), citations for ordinance violations "may be issued by law enforcement officers of the . . . town." But it is undisputed that the town does not have any law enforcement officers. Dkt. 80, ¶ 59. Section 66.013(2) also allows the town to "designate by ordinance or resolution other . . . officials who may issue citations with respect to ordinances which are directly related to the official responsibilities of the officials." It is undisputed that the town has not enacted an ordinance that allows any other official to issue a citation. Dkt. 80, ¶¶ 60–61. The town's position is that neither county nor state officials have authority to enforce the town's ordinance, *id.* ¶ 63, and plaintiffs cite no contrary evidence or authority. So the town's position is that no one has authority to enforce the ordinance until the town hires a law enforcement officer or enacts an ordinance that allows other officials to issue citations. And it has no plans to do either of those things.

---

[1] The ordinance also refers generally to "Wisconsin state boating penalties as found in s. 30.80, Wis. Stats." Dkt. 57-3, at 2. But the ordinance does not incorporate any specific penalties from that statute, and the ordinance states that "all references [in Wis. Stat. § 30.80] to fines are amended to forfeitures and all references to imprisonment are deleted." *Id.* Plaintiffs do not contend that any penalty other than a civil forfeiture is authorized by the ordinance.

Plaintiffs do not dispute that the town currently lacks authority to issue citations for violations of the ordinance. But plaintiffs say that there is still a credible threat of enforcement for three reasons: (1) Wis. Stat. § 60.24(1)(e) requires the town chair to enforce ordinances; (2) the town could quickly hire a law enforcement officer or pass an ordinance that allows others to issue citations; and (3) the town does not need citation authority to enforce the ordinance.

Section 60.24(1)(e) states that the town board chairperson "shall . . . [s]ee that town orders and ordinances are obeyed." Plaintiffs say that § 60.24(1)(e) gives Barton a non-discretionary duty to enforce the ordinance. But that's inconsistent with *Vretenar v. Hebron*, 144 Wis. 2d 655, 663, 424 N.W.2d 714, 717 (1988), in which the court held that "the prosecution and enforcement of municipal ordinance violations are discretionary duties such that their performance cannot be compelled through mandamus." In any event, even if § 60.24(1)(e) did create a duty, plaintiffs provide no support for the view that § 60.24(1)(e) gives Barton the authority to issue citations.

As for the second argument, plaintiffs are correct that the town could take the steps necessary to issue citations for violations of the isolation. The town could hire an officer or pass an ordinance that allowed other officers to issue citations. But town board members have disavowed any intention of doing either of those things. The town has not had a law enforcement officer since the ordinance was enacted. Board member Vanous explained that the town did not want to pay for a law enforcement officer. Dkt. 40, at 14:14–15:1. And the town has never had an ordinance in place that authorized non-law enforcement officials to enforce ordinances. Dkt. 80, ¶ 61. Plaintiffs identify no reason why either of these things will change anytime soon.

8

It is true that Barton testified that the town "would maybe have to reconsider" enforcement "if there's a lot of complaints." Dkt. 42, at 97:1–14. But plaintiffs identify no reason why that is likely to occur. By plaintiffs' own assertion, few people use Birch Island Lake for wakesurfing, and no one has complained about plaintiffs' wakesurfing either before or after the ordinance was enacted. Dkt. 76, ¶¶ 44, 65, 71–72, 73; *see also* Dkt. 42 (Barton Dep. 95:3–8). So it is simply speculation that the town is likely to take change course in the foreseeable future.

Plaintiffs' third contention—that the town doesn't need to issue citations to enforce the ordinance—rests on the following sentence in Wis. Stat. § 66.0113(4): "The adoption and authorization for use of a citation under this section does not preclude the governing body from adopting any other ordinance or providing for the enforcement of any other law or ordinance relating to the same or any other matter." Plaintiffs cite no case law construing that provision, but plaintiffs read it to mean that the town can enforce the ordinance without issuing citations. But the only potential alternative mechanism for enforcement that plaintiffs identify is to file a lawsuit. Even if the court assumes that option is available to the town, plaintiffs identify no reason why there is a credible threat of such a lawsuit. Plaintiffs identify no other instance in which the town sued a resident to enforce an ordinance. In light of the town's demonstrated lack of interest in enforcement, it is highly implausible that the town would go through the effort and expense of suing plaintiffs to stop them from wakesurfing.

Plaintiffs also say that a credible threat of enforcement can be inferred from two other things: (1) the ordinance itself states that it "shall be enforced;" and (2) the town allowed the local lakes association to put up a sign about the ordinance next to the lake's public landing. Plaintiffs' first contention is similar to their contention under § 60.24(1)(e), and it fails for the

9

same reason: the mandate in the ordinance does not give the town authority to issue citations, and plaintiffs have not adduced evidence that the town is likely to attempt enforcement another way.

As for the sign, plaintiffs do not identify what the sign says, except that it "provide[s] notice of the Ordinance." Dkt. 76, ¶ 80. Regardless, it is undisputed that the lakes association put up the sign, not the town, and the posting of the sign was required by Wis. Stat. § 30.77(4), so it is not evidence of the likelihood of enforcement.

What remains is an ordinance that prohibits certain conduct but does not provide the means for enforcing that prohibition. Even when a law mandates certain behavior, there is no standing to sue when there is no penalty for violating the mandate. *See California v. Texas*, 593 U.S. 659, 670–71 (2021) (concluding that there was no standing to challenge federal mandate to buy health insurance because "there is no action—actual or threatened—whatsoever. There is only the statute's textually unenforceable language."). That is the case here, at least until the town takes additional action for which there is no indication it will take.

Plaintiffs have not shown that they have standing to sue, so the court will grant the town's motion for summary judgment and dismiss the case without prejudice. *See Am. Bottom Conservancy v. U.S. Army Corps of Eng'rs*, 650 F.3d 652, 660 (7th Cir. 2011) (when a district court dismisses a suit for lack of standing, "it [has] no jurisdiction [and] therefore [can] only dismiss without prejudice").

ORDER

IT IS ORDERED that:

1.  Defendant Town of Scott's motion for summary judgment, Dkt. 47, is GRANTED, and plaintiff Chad M. McEver and Scott Oppenheimer's motion for partial summary judgment, Dkt. 52, is DENIED.

2.  The case is DISMISSED without prejudice for lack of standing.

3.  The clerk of court is directed to enter judgment accordingly and close this case.

Entered July 17, 2026.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge